1  P. Kristofer Strojnik, SBN 242728
2  pstrojnik@strojniklaw.com
   Esplanade Center III, Suite 700
3  2415 East Camelback Road
   Phoenix, Arizona 85016
4  415-450-0100 (tel.)

5  Attorneys for Plaintiff

6
                  **UNITED STATES DISTRICT COURT**
7
                 **CENTRAL DISTRICT OF CALIFORNIA**
8

9  THERESA BROOKE, a married woman
   dealing with her sole and separate claim,    Case No: 2:23-cv-10599-ODW
10
11                          Plaintiff,          **PLAINTIFF'S RESPONSE TO
                                                COURT'S OSC RE SUPPLEMENTAL
12  vs.                                         JURISDICTION**

13  DAVINA INC.,
14
15                          Defendant.

16
         Plaintiff Theresa Brooke hereby responds to the Court's Order to Show Cause
17
   regarding supplemental jurisdiction over her Unruh Civil Rights Act claim. Plaintiff
18
   seeks $4,000.00 in damages.
19
   **A.  It is Debatable as to Whether Plaintiff is a High-Frequency Litigant**
20
         As shown in Exhibit 1 Declaration, it is debatable as to whether Plaintiff is in
21
   fact a high-frequency litigant. While 10 or more construction accessibility complaints
22
   have been filed on Plaintiff's behalf, *she* has not filed the complaints. After review of
23
   the statute and surrounding statutes, the term "file" does not seem to be defined. Taking
24
   the plain meaning of the term, Plaintiff does not file these; *rather*, her counsel does.
25
   Section 425.55(b)(1) clearly states the plaintiff must file the complaints. Plaintiff posits
26
   that this issue is debatable because it would have been easy for the California legislators
27
   to add to the legislation "or on whose behalf was filed," but it was not. Plaintiff believes
28

that a simple and plain reading of the statute does not apply to Plaintiff because there is no definition of "file" and therefore not unreasonable to assign the standard definition to it, and no statutory language "or on whose behalf was filed" was added to the legislation.

**B.  Plaintiff's Counsel is Definitely Not a High-Frequency Litigant**

Section 425.55 requires an attorney to represent 10 plaintiffs. As shown in Exhibit 2 Declaration, Plaintiff's counsel only represents Theresa Brooke in ADA accessibility claims and does not meet the 10-plaintiff threshold to be an attorney high-frequency litigant. Moreover and as described above, it is debatable as to whether that one plaintiff is a high-frequency litigant herself. Accordingly, Plaintiff's counsel is not a high-frequency litigant.

**C.  The *Gibbs* Values Overwhelmingly Favor Retaining Jurisdiction**

Assuming the Court assigns the designation of a HFL to Plaintiff, jurisdiction should still be retained. The Ninth Circuit's decision in the case of *Arroyo v. Rosas*, No. 19-55974, which held that there were no "compelling reasons" to decline supplemental jurisdiction, determined that the issue of supplemental jurisdiction over Unruh claims, as it pertains to 1367(c)(4), is a case-by-case determination. Given Plaintiff's research into Central District's OSCs regarding this issue over the past two years, she has not discovered one instance in which the OSC did not result in a declination of jurisdiction. At this time, therefore, Plaintiff respectfully states that she believes the rationale set forth in *Arroyo* dictates that there are no compelling reasons to decline Unruh jurisdiction. Compelling reasons are required to decline Unruh jurisdiction pursuant to *Arroyo*, but here, no such compelling reasons have been shown. The Court may point out that in *Arroyo*, in making its ruling, the Court stated that had the declination occurred at the outset of the litigation, as is the case here, it "**might** then still have been possible" to further California's special interests of deterring extortionate tactics against small businesses. *Id*. The term "might" is the past tense of "may", which the latter is

defined as "expressly possibility." So stated another way, according to the Ninth Circuit, in a case-specific adjudication, its only "possible" to serve California's interests if declination occurs at the outset of the case.

In *Arroyo*, the issue of comity was discussed only as part of the exceptional circumstances prong of 1367(c)(4), and only one of four (1 of 4) factors in analyzing the *Gibbs* factors. This means that there are other factors too to assess whether there are compelling reasons, which are the *Gibbs* factors. Too many trial courts are putting too much weight on just one of the four factors, the four factors are of equal weight. In *Arroyo*, the Court said that it "might" be possible to decline early; it never said that trial courts must decline if the case is early. That is a misreading. A careful reading of *Arroyo* shows that exceptional circumstances will always be present because of comity and alleged avoidance of California's (unconstitutional) treatment of disabled plaintiffs. But as for compelling reasons, a careful reading will show that "comity" is only one of four factors. Those factors are: (1) Fairness to litigants, (2) Judicial Economy, (3) Convenience, and (4) Comity. Well, comity favors send a state law claim, proof of which is shown by a violation of the ADA, back to state court for the litigants to litigate two cases instead of one. However, the remaining three factors overwhelmingly favor retention. First, it is extremely unfair both to Plaintiff and Defendant to require them to pay a wholly new filing fee, deal with the disorganization of state court filing practices, which differ county by county. It is not fair to Defendant to require it to pay a filing fee for an Answer in state court when it can defend here for free. No reasonable person would call that fair. Second, the same analysis should be used for convenience. As an initial matter, maybe this particular court is not familiar with filing practices in state court versus federal court, but federal court is EXTREMELY convenient and organized whereas county superior court filing systems are EXTREMELY complex, disorganized and pale in comparison to the efficiency of PACER and ECF. Moreover, it is wholly inconvenient to Defendant in this case to require it to pay more money to defend against the same case. Finally, judicial economy favors retention. As for federal economy, this

1   Court knows, and most Central District judges issues orders on, that ADA cases
2   generally settle very quickly, one way or the other. If supplemental jurisdiction were to
3   be declined, forcing plaintiff and defendant to litigate two different cases, two different
4   judges (this judge and the county judge) to rule on the same exact issues. No reasonable
5   person would ever refer to that as "economic", "easy" or "convenient." Quite the
6   opposite. In summary, the entire discussion about comity and alleged avoidance of
7   higher filing fees, as unconstitutional as higher fees are, relates to "exceptional
8   circumstances." As for the *Gibbs* factors, which apply to the second factor of
9   "compelling reasons," comity is only one of four factors. Three of the other four factors
10  weigh in favor of retention. Nothing in Arroyo suggests that comity should be given
11  heavier weight than the other three *Gibbs* factors. Although this case is early, it is not
12  automatic that Unruh should be declined; there are no unique circumstances that sway
13  the *Gibbs* factors in this case. Plaintiff understands why there are an odd number of
14  judges on the Supreme Court; human interpretation comes into play. However, on such
15  a simple issue, a correct reading of *Arroyo* (exceptional circumstances is one thing, but
16  analyzing *Gibbs* for compelling reasons is another) shows there are no compelling
17  reasons here.

18  **D.  <u>Pre-emption</u>**

19         28 C.F.R. 36.103(c) expressly and very clearly preempts Unruh's lesser and
20  unequal rights and procedures. There are three ways in which preemption occurs. First,
21  preemption occurs through an express act of Congress. *Arizona v. United States*, 567
22  U.S. 387, 399 (2012). Second, preemption occurs where Congress intends to occupy and
23  govern a particular field or subject matter. *Id.* Finally, preemption occurs where state and
24  federal laws conflict; "[t]his includes cases where compliance with both federal and state
25  regulations is a physical impossibility, and . . . where the challenged state law stands as
26  an obstacle to the accomplishment and execution of the full purposes and objectives of
27  Congress." *Id.* (internal citations and marks omitted). No matter "the type of preemption
28  involved—express field, or conflict—'[t]he purpose of Congress is the ultimate

touchstone of pre-emption analysis.'" *Nat'l Fed'n of the Blind v. United Airlines Inc.,* 813 F.3d 718, 724 (9th Cir. 2016) 3 (citing *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 516 (1992)). In "determining the F[AAAA's] preemptive scope, [the court is] bound by a long line of precedent that requires [it], among other things, to consider Congresses' pre-emption-related objectives in enacting [preempting legislation]. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644 at 654 (citation and internal marks omitted).

Congress' objectives for passing the ADA are stated at 42 U.S.C. §12101(b)(1)-(3).These objectives include "a clear and **comprehensive national mandate** for the elimination of discrimination against individuals with disabilities", "clear, strong, **consistent,** enforceable **standards** addressing discrimination against individuals with disabilities", and "**Federal Government's …central role in enforcing [the ADA]**". (Emphasis added.)

The parties in *Arroyo* did not address the significant question whether a finding of "exceptional circumstances" may be based on Unruh's special procedural requirements that are expressly pre-empted by 28 C.F.R. §26.103(c).

28 C.F.R. §36.103(c) provides that "[Part 36] does not invalidate or limit the remedies, rights, and procedures of any … State or local laws …that provide *greater or equal protection* for the rights of individuals with disabilities (Emphasis supplied). It states:

**§36.103 Relationship to other laws.**

(c) *Other laws.* **This part does not invalidate or limit the** remedies, **rights, and _procedures_** of any other Federal laws, or State or local laws (including State common law) **that provide greater or equal protection for the rights of individuals with disabilities** or individuals associated with them. (Emphasis added.)

As a necessary corollary, Part 36 *does* invalidate the *rights, remedies* and *procedures* of State laws that provide *lesser* or *unequal* protection for the rights of individuals with disabilities. As recognized in *Arroyo,* Unruh amendments provide for

lesser and unequal protection of disabled Plaintiff's rights and procedures in the following particulars:

1. It requires a disabled plaintiff to pay a $1,000 filing fee surcharge. This procedural device chills and limits a disabled person's right to access to the court.

2. It requires a disabled plaintiff self-identity with the disparaging designation of a "high frequency litigant."

3. It requires a disabled individual to disclose how many times he has been discriminated against during the preceding 12 months and filed suit.

4.  It requires a disabled plaintiff to state the reasons why he was in the was in "the geographic area of the defendant's business."

5. It requires a disclosure why a disabled plaintiff "desired to access the defendant's business."  Cal. Civ. Code § 425.50(a)(4)(A).

The 9th Circuit Court of Appeals referred to these pleading requirements as "heightened" and "special". *See, e.g., Arroyo*, 19 F.4th at 1206, 1209. **These "heightened" and "special procedural requirements [are] aimed at limiting suits by [disabled individuals]."** *Id.* 19 F.4th at 1211. These  heightened and special limitations violate express federal pre-emption provision found in 28 C.F.R. §36.103(c)[1] and the very purpose of federal disability law.

California procedures run counter Congress' specific purposes enumerated in 42 U.S.C. §12101(b)(1)-(3). Plaintiff submits that federally preempted special limitations aimed to restrict a pro-se plaintiff's substantive and procedural rights cannot form a finding of "special circumstances" under 28 U.S.C. §1367(c)(4). To the contrary, California's special procedures provide circumstances that work *in favor* of supplemental jurisdiction because only in Federal Court will Plaintiff be able to receive the full and equal protection to which he is entitled.

---

[1] Federal regulation has the force of law and pre-empts state law. *Hillsborough Cnty. V. Auto Med Labs, Inc.* 471 U.S. 707, 713 (1985).

1

2

3 RESPECTFULLY SUBMITTED this 22d day of December, 2023.

4                                              /s/ P. Kristofer Strojnik

5                                              P. Kristofer Strojnik (242728)
                                               Attorneys for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28